UNITED STATES DISTRICT
COURT WESTERN DISTRICT OF KENTUCKY
AT LOUISVILLE

UNITED STATES OF AMERICA                                          PLAINTIFF

v.                                        CRIMINAL ACTION NO. 3:00-CR-48-CRS

FRANKLIN WALES                                                    DEFENDANT

### MEMORANDUM OPINION AND ORDER

This matter is before the Court for consideration of a motion of the defendant, Franklin Wales, *pro se*, seeking a reduction of his term of imprisonment due fear of serious illness or death from the COVID-19 virus (DN 157). He also requests appointment of counsel. The United States has responded, objecting to the motion. DN 159.

The World Health Organization declared the novel coronavirus known as COVID-19 a pandemic on March 11, 2020.[1] The President of the United States declared a national emergency on March 13, 2020 and the Governor of the Commonwealth of Kentucky declared a state of emergency even earlier, after the first confirmed case of COVID-19 on March 6, 2020.[2] As of the date of this writing, there are 10,185,374 confirmed cases worldwide and 503,862 deaths; in the United States, there are 2,537,636 confirmed cases and 126,203 deaths.[3] Further elaboration

---

[1] *See* Tedros Adhanom Ghebreyesus, Director-General, World Health Organization, Opening Remarks at the Media Briefing on COVID-19 (March 11, 2020) (transcript available at https://www.who.int/dg/speeches/detail/who- director-general-s-openingremarks-at- the-media-briefing-on-covid-19--11-march-2020).

[2] *See* President Donald J. Trump's Proclamation on Declaring a National Emergency Concerning the Novel Coronavirus Disease (COVID-19) Outbreak (March 13, 2020), *available at* https://www.whitehouse.gov/presidential-actions/proclamation-declaring-national-emergency-concerning-novel- coronavirus-disease-covid-19-outbreak/; Governor Andy Beshear confirms first case of COVID-19 in the Commonwealth and declares a state of emergency (March 6, 2020), *available at* https://chfs.ky.gov/pages/search.aspx?affiliateId=CHFS&terms=declaration of state of emergency.

[3] *See* Coronavirus Disease (COVID-19) Situation Dashboard, World Health Organization, https://who.sprinklr.com/ (last visited May 10, 2020).

concerning the health risks associated with COVID-19, especially for those individuals confined to nursing homes or incarcerated in our jails and prisons, is unnecessary. Suffice it to say that the Court addresses motions for compassionate release, and Wales' motion in particular here, with the gravity of the situation in mind.

Wale is serving a 360-month prison sentence after his November 9, 2000 conviction for possession with intent to distribute and conspiracy to possess with intent to distribute cocaine. DN 58. This was not his first drug trafficking conviction. Wales was sentenced in this case as a career offender.

Wales filed a *pro se* motion for compassionate release DN 157.

18 U.S.C. § 3582(c)(1)(A) permits a court to modify a term of imprisonment and grant what is known as "compassionate release" for extraordinary and compelling reasons. Prior to December 2018, motions for compassionate release could only be made by the Director of Prisons. However, the First Step Act, PL 115- 391, 132 Stat 5194 (Dec. 21, 2018), amended 18 U.S.C. § 3582(c)(1)(A) to allow defendants to bring such motions on their own behalf "after the defendant has fully exhausted all administrative rights to appeal a failure of the Bureau of Prisons to bring a motion on the defendant's behalf, or the lapse of 30 days from the receipt of such a request by the warden of the defendant's facility[.]"

Wales has provided a copy of a request for compassionate release submitted to Warden Mark K. Williams dated April 20, 2020. DN 157-4, p. 2. Warden Williams responded to his request on April 28, 2020, denying the request on the ground that Wales did not meet the criteria establishing extraordinary and compelling reasons for reduction in sentence, citing the Bureau of Prisons ("BOP") Program Statement No. 5050.50, <u>Compassionate Release/Reduction in</u>

Sentence; Procedures for Implementation of 18 U.S.C. §§ 3582(c)(1)(A). *Id.* at p. 1.  The Warden further noted:

> The BOP is taking extraordinary measures to contain the spread of COVID-19 and is treating affected inmates.  We recognize that you, like all of us, have legitimate concerns and fears about the spread and effects of the virus.  However, your concern about being potentially exposed to, or possibly contracting, COVID-19 does not currently warrant an early release from your sentence.  Accordingly, your RIS request is denied at this time.

Wales filed his motion with this Court on June 29, 2020, over thirty days after the Warden's denial of his request.

Wales has satisfied the exhaustion requirement of the First Step Act.  *United States v. Alam*, No. 20-1298, 2020 WL 2845694, *2 (June 2, 2020)("For a prisoner to take his [compassionate release] claim to court, "he must 'fully exhaust[ ] all administrative rights to appeal' with the prison or wait 30 days after his first request to the prison.").

Under § 3582(c)(1)(A), a court may reduce a defendant's sentence if it finds that "extraordinary and compelling circumstances warrant such a reduction," and that "such a reduction is consistent with the applicable policy statements issued by the Sentencing Commission." 18 U.S.C. § 3582(c)(1)(A)(i). The court must also consider the "[sentencing] factors set forth in section 3553(a) to the extent they are applicable." § 3582(c)(1)(A).

Congress tasked the Sentencing Commission that, "in promulgating general policy statements regarding the sentencing modification provisions in section 3582(c)(1)(A) of Title 18, [it] shall describe what should be considered extraordinary and compelling reasons for sentence reduction, including the criteria to be applied and a list of specific examples." 28 U.S.C. § 994(t).

In the Commentary to U.S.S.G. § 1B1.3,[4] the Commission described four circumstances which constitute extraordinary and compelling reasons for sentence reduction:

**(A) Medical Condition of the Defendant.--**

**(i)** The defendant is suffering from a terminal illness (i.e., a serious and advanced illness with an end of life trajectory). A specific prognosis of life expectancy (i.e., a probability of death within a specific time period) is not required. Examples include metastatic solid tumor cancer, amyotrophic lateral sclerosis (ALS), end-stage organ disease, and advanced dementia.

**(ii)** The defendant is--

**(I)** suffering from a serious physical or medical condition,

**(II)** suffering from a serious functional or cognitive impairment, or

**(III)** experiencing deteriorating physical or mental health because of the aging process, that substantially diminishes the ability of the defendant to provide self-care within the environment of a correctional facility and from which he or she is not expected to recover.

**(B) Age of the Defendant.--**The defendant (i) is at least 65 years old; (ii) is experiencing a serious deterioration in physical or mental health because of the aging process; and (iii) has served at least 10 years or 75 percent of his or her term of imprisonment, whichever is less.

**(C) Family Circumstances.--**

**(i)** The death or incapacitation of the caregiver of the defendant's minor child or minor children.

**(ii)** The incapacitation of the defendant's spouse or registered partner when the defendant would be the only available caregiver for the spouse or registered partner.

**(D) Other Reasons.--**As determined by the Director of the Bureau of Prisons, there exists in the defendant's case an extraordinary and compelling reason other than, or in combination with, the reasons described in subdivisions (A) through (C).

---

[4] "While that particular policy statement has not yet been updated to reflect that defendants (and not just the BOP) may move for compassionate release, courts have universally turned to U.S.S.G. § 1B1.13 to provide guidance on the "extraordinary and compelling reasons" that may warrant a sentence reduction. *E.g., United States v. Casey*, 2019 WL 1987311, at *1 (W.D. Va. 2019); *United States v. Gutierrez*, 2019 WL 1472320, at *2 (D.N.M. 2019);*United States v. Overcash*, 2019 WL 1472104, at *2-3 (W.D.N.C. 2019). There is no reason to believe, moreover, that the identity of the movant (either the defendant or the BOP should have any impact on the factors the Court should consider."
*United States v. McGraw*, No. 202CR00018LJMCMM, 2019 WL 2059488, at *2 (S.D. Ind. May 9, 2019).

The BOP promulgated Program Statement No. 5050.50 in order to implement the statutory scheme.

Wales goes to great lengths to document the spread of the virus and the devastation wrought by the pandemic.[5] He expresses his fear that if he contracts COVID-19 he might not survive it.  He urges that "COVID-19 is "extraordinary and compelling" because "COVID-19 is an unprecedented and rapidly-expanding global health emergency that presents a serious risk to vulnerable prisoners." DN 157, p. 8. This is the sole ground for the assertion of "extraordinary and compelling" circumstances warranting relief.  Wales also appears to assert that he is medically vulnerable, although he does not identify any medical conditions which he himself has that, alone or in combination with potential COVID-19 infection, qualify him for compassionate release.  DN 157, p. 14 ("While Defendant is among those with the highest risk of death or serious illness from COVID-19, as a Bureau of Prisons inmate, it is impossible for him to follow the CDC's recommendations to protect himself from exposure to this highly-transmissible disease.").

To the extent Wales contends that his sentence should be reduced to time served because he is medically at high risk for complications should he contract COVID-19, his motion will be denied.  He has not been diagnosed with a terminal illness.  His medical records indicate only a few minor medical conditions, none of which are identified by the CDC as increasing his susceptibility to severe illness from COVID-19.  By all accounts, Wales is a healthy 59-year-old man who has, to date, tested negative for the virus, despite the number of positive cases in the institution.  Wales has not shown that he meets the criteria for statutory eligibility for

---

[5] Wales has filed a detailed 20-page brief with attachments including an affidavit of Dr. Chris Beyrer, Professor of Epidemiology at Johns Hopkins Bloomberg School of Public Health, the Attorney General's April 3, 2020 memorandum concerning increase in the use of home confinement, and various charts tracking the increase in cases of COVID-19 nationally.

compassionate release, as he is not terminally ill, nor does he suffer from a serious physical or mental condition with a diminished capacity to provide self-care (A)(i)-(A)(iii).  *See*, U.S.S.G. § 1B1.3(A).  Thus, Wales has failed to articulate an extraordinary and compelling reason for compassionate release on this basis.

Wales is not yet 65 years old nor has he articulated a family circumstance which would qualify him for consideration for compassionate release under U.S.S.G. §§ 1B1.3(B) or (C).

To the extent he contends that the risk of contracting COVID-19 at FCI Elkton qualifies him for compassionate release based upon the "other reasons" category, the risk of COVID-19 infection does not qualify under the standards for eligibility set forth in the BOP Program Statement 5050.50 which provides guidance concerning the BOP's application of U.S.S.G. § 1B1.3(D).

The Warden stated as much in his denial of Wales' initial request.  Acknowledging the legitimacy of the concern over the potential for contracting the virus, the Warden notes that the BOP is taking extraordinary measures to contain the spread and treat affected inmates.  DN 157-4.  The United States has provided greater detail concerning the BOP's COVID-19 Action Plan, noting the following updates to its procedures:

> BOP's operations are presently governed by Phase Seven of the Action Plan. The current modified operations plan requires that all inmates in every BOP institution be secured in their assigned cells/quarters, in order to stop any spread of the disease. Only limited group gathering is afforded, with attention to social distancing to the extent possible, to facilitate commissary, laundry, showers, telephone, and computer access. Further, BOP has severely limited the movement of inmates and detainees among its facilities. Though there will be exceptions for medical treatment and similar exigencies, this step as well will limit transmissions of the disease. Likewise, all official staff travel has been cancelled, as has most staff training.

All staff and inmates have been and will continue to be issued face masks and strongly encouraged to wear an appropriate face covering when in public areas when social distancing cannot be achieved.

Every newly admitted inmate is screened for COVID-19 exposure risk factors and symptoms. Asymptomatic inmates with risk of exposure are placed in quarantine for a minimum of 14 days or until cleared by medical staff. Symptomatic inmates are placed in isolation until they test negative for COVID-19 or are cleared by medical staff as meeting CDC criteria for release from isolation. In addition, in areas with sustained community transmission, all facility staff are screened for symptoms. Staff registering a temperature of 100.4 degrees Fahrenheit or higher are barred from the facility on that basis alone. A staff member with a stuffy or runny nose can be placed on leave by a medical officer.

Contractor access to BOP facilities is restricted to only those performing essential services (e.g. medical or mental health care, religious, etc.) or those who perform necessary maintenance on essential systems. All volunteer visits are suspended absent authorization by the Deputy Director of BOP. Any contractor or volunteer who requires access will be screened for symptoms and risk factors.

Social and legal visits were stopped as of March 13, and remain suspended at this time, to limit the number of people entering the facility and interacting with inmates. In order to ensure that familial relationships are maintained throughout this disruption, BOP has increased detainees' telephone allowance to 500 minutes per month. Tours of facilities are also suspended. Legal visits will be permitted on a case-by-case basis after the attorney has been screened for infection in accordance with the screening protocols for prison staff.

Further details and updates of BOP's modified operations are available to the public on the BOP website at a regularly updated resource page: www.bop.gov/coronavirus/index.jsp.

DN 159, pp. 5-6. While this provides little comfort to inmates who feel their safety is threatened, it does establish that the BOP is responding and aggressively addressing the threat and providing care to those who become infected.

Additionally, even when a defendant is statutorily eligible for a sentence reduction based on extraordinary and compelling reasons, compassionate release is only appropriate after consideration of the factors set forth in 18 U.S.C. §3553(a) and where the defendant is not a danger to the safety of any other person or to the community, as provided in 18 U.S.C. § 4142(g).

The United States urges under §3553(a)(1), that the nature and circumstances of Wales' crimes weigh against release as he poses a very real danger if released from custody. The Court agrees for a number of reasons.

First, Wales is a repeat offender who was convicted for possessing with intent to distribute and conspiracy to possess with intent to distribute approximately one kilogram of cocaine  DN 74, ¶ 9 and qualified as a career offender for purposes of sentencing.  He was on parole at the time of the offenses giving rise to this case DN 74.  Thus there appears a real possibility that Wales may disregard conditions of release and reoffend.

Wales indicated that if released, he "plans to live with his fiancé…in Louisville, Kentucky..."  DN 157, p. 2.  Wales thus fails to provide a valid release plan.  In any event, with the dangers posed by the pandemic impacting the ability of the probation officers to conduct home visits and supervision, it would be exceptionally difficult to adequately and safely monitor the defendant's compliance.  The ability to monitor the defendant is clearly a proper consideration when assessing the danger posed by release of an individual, especially where (1) the defendant had prior drug offenses; (2) the defendant had prior violent offenses; (3) the defendant's criminal history qualified him as a career offender; and (4) the defendant committed the offense in this case while on parole.  DN 74, ¶¶ 38-54.

Second, the sentencing factors were thoroughly and carefully considered in imposing sentence in this case.  The nature and circumstances of the offense, the weight of the evidence, Wales' history and characteristics, and the nature and seriousness of the danger to any person or the community that would be posed by Wales' release were taken into account in reaching the imposition of a 360-month prison sentence.  The Court finds no ground to justify any reduction in Wales' sentence, and Wales has articulated none, beyond his opinion that ""[u]nder all of the

circumstances in this case, the Court should conclude that the time the Defendant has already served is sufficient to satisfy the purpose of sentencing."  DN 157, p. 17.  Again, he asserts COVID-19 as the "post-offense developments" in his case.  This argument is untenable.  As previously stated, the COVID-19 pandemic and the prevalence of the virus among the prison population is not, alone, a ground for compassionate release.  Reducing Wales' sentence would diminish the seriousness of his crimes and would not protect the public.  18 U.S.C. § 3553(a)(2). Further, based upon Wales' criminal history and the offense conduct in this case, the Court could not conclude that Wales "is not a danger to the safety of any other person or the community," as required by USSG § 1B1.13(2). In view of all of these factors, compassionate release would be improper.

Finally, there is no entitlement to appointment of counsel post-trial, and the circumstances do not warrant it.  Appointment of counsel will therefore be denied.

Motion having been made and for the reasons set forth herein and the court being otherwise sufficiently advised, **IT IS HEREBY ORDERED AND ADJUDGED** that the motion of the defendant, Franklin Wales, for compassionate release (DN 157) is **DENIED.**  His request for appointment of counsel is also **DENIED.**

**IT IS SO ORDERED.**

July 24, 2020

cc:   Counsel of Record
      Franklin Wales
      #07334-033
      FCI Elkton
      P.O. Box 10
      Lisbon, OH 44432

**Charles R. Simpson III, Senior Judge**
**United States District Court**

9